**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
EASTERN DIVISION

FILED

APR - 7 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

BRIAN DIPIPPA,

    Petitioner,

v.

WARDEN, FCI ELKTON,

    Respondent.

)
)
)
)
)
)
)
)
)

Case No. 4:26-cv-00487-CEF

Judge Charles E. Fleming

Mag. Judge Jennifer Dowdell Armstrong

### DECLARATION OF BRIAN DIPIPPA IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS
### AND MOTION TO EXPEDITE

I, Brian DiPippa, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct. I am the Petitioner in this action, I have personal knowledge of the facts stated herein, and I am competent to testify to them.

I filed my Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 on February 26, 2026. (Dkt. 1.) On that same date, I filed a Motion for Order with supporting exhibits documenting my administrative exhaustion and the Bureau of Prisons' denial of my First Step Act time credits. (Dkt. 2.)

I submit this declaration in support of my Petition and my Motion to Expedite Briefing Schedule. I respectfully ask this Court to enter an order directing the Bureau of Prisons to:

(1) Credit 121 program days of First Step Act time credits across both periods at issue (approximately 50 days from January 6, 2025 through February 26, 2025, and approximately 71 days from February 26, 2025 through May 8, 2025);

(2) Apply the resulting approximately 40 days of FSA Time Credit to my sentence under 18 U.S.C. § 3632(d)(4)(C); and

(3) Correct my projected release date from January 10, 2027 to approximately late November 2026, consistent with the statutory earning rate.

## I. STATUTORY ELIGIBILITY

I am eligible to earn First Step Act time credits. I have no conviction that disqualifies me under any of the offenses listed in 18 U.S.C. § 3632(d)(4)(D)(i) through (lxviii). Unlike petitioners whose claims have been denied on the basis of statutory ineligibility, *see, e.g., Gilbert v. Healy*, No. 1:25-cv-01627, 2026 WL 657027 (N.D. Ohio Mar. 9, 2026) (denying petition where petitioner's fentanyl conviction rendered him categorically ineligible), I am not disqualified from earning or receiving time credits under the statute. My eligibility is not in dispute.

## II.  CASE TIMELINE

The following is a chronological summary of the key events relevant to my claims. A detailed timeline is attached as Exhibit 29.

| Date | Event |
| --- | --- |
| June 30, 2023 | Taken into custody at Butler County Prison (pre-trial). |
| Jan. 6, 2025 | Sentenced in federal court. Federal sentence commenced. FSA time credit accrual begins. 18 U.S.C. § 3585(a). |
| Jan. 8, 2025 | Transferred from Butler County Prison to Northeast Ohio Correctional Center (NEOCC). |
| Jan. 22, 2025 | Entered federal custody. |
| Feb. 26, 2025 | Arrived at FCI Elkton, the designated BOP facility. (Dkt. 2-22.) |
| Feb. 27, 2025 | Completed SPARC-13 needs assessment at the first available opportunity. |
| Mar. 20, 2025 (approx.) | BOP completed initial classification and placed me into programming. The delay from February 27 to approximately March 20 was entirely within BOP control. |
| May 8, 2025 | End of the second uncredited programming period. |
| July–Dec. 2025 | Administrative remedies pursued through all levels and denied. (Dkt. 2-1 through 2-16.) |
| Jan. 8, 2026 | FSA Time Credit Assessment issued, projecting Conditional Release date of January 10, 2027. (Dkt. 2-17.) |
| Feb. 20, 2026 | Placed Habeas Petition in institutional mailbox at FCI Elkton. Houston v. Lack, 487 U.S. 266 (1988). |
| Feb. 24, 2026 | Transferred to Renewal Inc., Pittsburgh, Pennsylvania. |
| Feb. 26, 2026 | Petition filed by the Clerk. (Dkt. 1, 2.) |
| Mar. 25, 2026 | Case referred to Mag. Judge Armstrong; Initial Order issued. (Dkt. 3, 4.) |

## III.  EARNED TIME CREDITS

The First Step Act provides that eligible inmates "shall earn" time credits for successful participation in two categories of activity: (1) "evidence-based recidivism reduction programming" and (2) "productive activities." 18 U.S.C. § 3632(d)(4)(A). Congress intentionally created both categories. The second—productive activities—is broader than formal BOP classes and encompasses work assignments, educational activities, vocational training, and self-improvement efforts. The statutory requirement is "successful participation," not whether an activity carries a specific BOP program designation.

I earned time credits during two distinct periods that the Bureau of Prisons has refused to credit:

**Period One: January 6, 2025 through February 26, 2025 (approximately 50 program days).**

My federal sentence commenced on January 6, 2025. For the first two days following sentencing (January 6 through January 8, 2025), I remained at Butler County Prison. During those days, I continued working as a Unit Orderly and in the kitchen—both productive work assignments that qualify as productive activities under the statute. These post-sentencing work assignments are attested by Kailin Stewart (Dkt. 2-19) and Daniel Simon (Dkt. 2-21), who were housed with me at Butler County.

I note that prior to sentencing, while in pre-trial custody at Butler County, I also participated extensively in available programming, including earning certificates in Parenting and Anger Management, attending religious services, and organizing a poetry, art, and spoken-word social event. (Dkt. 2-19, 2-21.) While pre-sentencing activities do not generate FSA time credits, they are relevant to demonstrate a consistent pattern of rehabilitation and willingness to engage in productive activities at every opportunity—a pattern that continued uninterrupted after my sentence commenced.

On January 8, 2025, I was transferred to the Northeast Ohio Correctional Center (NEOCC), where I remained until February 26, 2025 (approximately 49 days). At NEOCC, the BOP did not make its FSA Needs Survey available to inmates and did not permit inmates to join waiting lists for BOP-designated programs. (Dkt. 2-18, 2-20; Ex. 22.) Upon arrival, I requested placement on the orderly waitlist in order to obtain a work assignment. That placement was not made available to me. I participated in the productive activities that NEOCC did permit, including regular movie and speaker discussion events held in the gymnasium, in-unit trivia nights, and leisure and fitness activities in the recreation area, as attested by Jeffrey Paden (Dkt. 2-18), Kailin Stewart (Dkt. 2-20), and Daniel Simon (Ex. 22).

At both post-sentencing facilities, I sought to participate in every qualifying activity made available to me. Where programming was limited or unavailable, the limitation was the facility's, not mine. The BOP cannot deny credits for periods during which it failed to provide programming opportunities and then penalize me for the absence of formal program designations that were never offered.

The BOP denied these credits, asserting that time credits cannot be earned before arrival at the designated facility. (Dkt. 2-3.) That position conflicts with the plain text of 18 U.S.C. § 3585(a), which provides that a sentence commences when the defendant is received into custody for service of the sentence, and with 18 U.S.C. § 3632(d)(4)(B), which provides that eligible inmates shall earn credits. Nothing in the statute conditions the accrual of credits on arrival at a particular BOP facility. Under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the BOP's reading of 28 C.F.R. § 523.42 carries no weight where it conflicts with unambiguous statutory text.

**Period Two: February 26, 2025 through May 8, 2025 (approximately 71 program days).**

I arrived at FCI Elkton on February 26, 2025. On or about February 27, 2025, I completed my SPARC-13 needs assessment at the first available opportunity. The BOP's own electronic system (TruLincs) failed to register the completion of that assessment. When I

became aware of the issue, I completed the assessment again at staff direction on paper. Despite this, the BOP disallowed 71 program days, asserting that the needs assessment was not completed. (Dkt. 2-7, 2-10, 2-15.)

This was not a failure on my part. It was an electronic glitch in the BOP's own system, and I took corrective action as soon as I was able. Courts have consistently held that BOP-caused delay in administering or recording needs assessments cannot be charged to the prisoner. *See Dunaev v. Engleman*, 2025 U.S. Dist. LEXIS 106421 (C.D. Cal. Apr. 28, 2025); *Dunlap v. Warden, FMC Devens*, 2024 U.S. Dist. LEXIS 235866 (D. Mass. 2024); *Puana v. J.F. Williams*, 2024 WL 4932514 (D. Colo. 2024).

**Credit Calculation.** The combined 121 uncredited program days (approximately 50 in Period One and 71 in Period Two), at the statutory earning rate of 10 days of FSA Time Credit per 30 program days under 18 U.S.C. § 3632(d)(4)(A)(i), yield approximately 40 additional days of credit. The BOP's current FSA Conditional Release date is January 10, 2027. (Dkt. 2-17.) With proper application of earned time credits, my corrected projected release date is approximately late November 2026.

## IV. ADMINISTRATIVE EXHAUSTION

I pursued administrative remedies regarding both claims through every level of the BOP's administrative remedy process, including informal resolution requests, formal administrative remedies (BP-9), regional appeals (BP-10), and Central Office appeals (BP-11). (Dkt. 2-1 through 2-16.) All remedies were denied or rejected. The administrative record is complete and is before the Court.

## V. CIRCUMSTANCES DEMONSTRATING URGENCY AND IRREPARABLE HARM

Since the filing of my Petition, circumstances have developed that demonstrate concrete, time-sensitive harm that will result from any delay in resolving this matter. Each of the following facts is tied directly to timing: delay does not merely postpone relief but makes it progressively less meaningful.

### A. Misapplication of Credits and Risk of Overdetention.

As set forth in Section III, the Bureau of Prisons is presently executing my sentence based on an incorrect credit calculation in violation of 18 U.S.C. § 3632(d)(4). That miscalculation is currently affecting my transition timeline, my eligibility for transfer to less restrictive custody, and the conditions under which I am held. If not corrected before my corrected projected release date of approximately late November 2026, I will serve time in custody beyond what the statute authorizes. That excess time cannot be given back. The error is present; the irreversible harm is imminent.

### B. Employment at Risk.

On March 18, 2026, I received a formal offer of employment from DeRiso Law Group, 429 Fourth Avenue, Suite 2101, Pittsburgh, Pennsylvania 15219, for the position of Legal Technology Assistant at an annual salary of $41,600. (Ex. 26.) The position is full-time and originally required accompanying counsel to hearings and proceedings in federal, state, and

county courts in downtown Pittsburgh.

On or about late March 2026, the Residential Reentry Manager at Renewal Inc. advised me verbally that I am prohibited from attending court proceedings as a condition of my placement. I have requested written confirmation of this restriction and will supplement the record upon receipt. As a result of this restriction, DeRiso Law Group issued a revised offer letter on March 26, 2026, removing the courtroom appearance duties. A copy of the revised offer will be filed as a supplemental exhibit upon receipt from my case manager at Renewal Inc.

My start date has been delayed and my employment is at risk. This is not a speculative future opportunity—it is a concrete offer from a named employer at a stated salary that I cannot fully accept while my custody status remains uncorrected. Each day of delay jeopardizes an employment opportunity that directly supports my reintegration.

### C. Family Circumstances.

My father is elderly, diabetic, and experiencing worsening memory difficulties that increasingly affect his ability to manage his own affairs and medical decisions. He needs family support that I cannot provide from my current custodial status. Correction of my release date would allow me to assume caregiving responsibilities sooner, during a period when that support matters most. His condition also requires that we address estate planning and end-of-life planning matters that cannot proceed without my participation.

### D. Litigation Schedule and Mootness Risk.

Under the current briefing schedule, the government's Answer is due May 9, 2026, and my Traverse is due June 23, 2026. Briefing does not close until late June 2026 at the earliest. Magistrate Judge Armstrong must then prepare a Report and Recommendation, after which the 14-day objection period under 28 U.S.C. § 636(b)(1) runs before Judge Fleming can rule. On a standard track, the Court's final decision is unlikely before late 2026 or early 2027.

As described in Section V.A, my corrected release date falls within that window. Any relief granted after that date would be effectively meaningless, because the excess custody will already have been served.

## VI. COMPLIANCE AND STATUTORY PURPOSE

The following facts, while not constituting independent claims of harm, are relevant to the Court's consideration of the equities and demonstrate that prompt relief serves the purposes of the First Step Act.

### A. Restitution Satisfied.

My court-ordered restitution obligation has been satisfied in full. The government cannot argue that continued custody is necessary to ensure compliance with my restitution obligation. My employment at DeRiso Law Group supports my continued financial stability and compliance with all remaining conditions of my sentence and supervised release.

### B. Rehabilitation and Reintegration.

Throughout my incarceration, I participated in extensive programming and productive activities as documented in the record. (Dkt. 2-22, 2-23.) Since my transfer to Renewal Inc., I have continued all programming obligations, maintained zero disciplinary infractions, and actively pursued lawful employment to support my reintegration. I have done exactly what the First Step Act was designed to incentivize. While the BOP has credited my programming from May 8, 2025 forward, its refusal to credit the 121 days at issue—during which I was equally engaged in qualifying activities—undermines the statute's purpose, which Congress enacted to encourage programming and accelerate release for eligible individuals who demonstrate rehabilitation from the commencement of their sentence.

## VII.  INDEX OF EXHIBITS

**Previously Filed Exhibits (Dkt. 2 Attachments)**

Ex. 1 — Request for Administrative Remedy — Informal Resolution Form (Aug. 14, 2025). (Dkt. 2-1, PageID #26.)

Ex. 2 — Request for Administrative Remedy, BP-9 (Sept. 17, 2025). (Dkt. 2-2, PageID #27.)

Ex. 3 — Administrative Remedy Response — Warden Healy (Oct. 8, 2025). (Dkt. 2-3, PageID #28.)

Ex. 4 — Regional Administrative Remedy Appeal, BP-10 (Oct. 10, 2025). (Dkt. 2-4, PageID #29–30.)

Ex. 5 — Central Office Administrative Remedy Appeal, BP-11 (Nov. 24, 2025). (Dkt. 2-5, PageID #31.)

Ex. 6 — Informal Resolution Form — Claim 2 (July 8, 2025). (Dkt. 2-6, PageID #32.)

Ex. 7 — Sworn Affidavit of Brian DiPippa (Feb. 18, 2026). (Dkt. 2-7, PageID #33–35.)

Ex. 8 — Request for Administrative Remedy, BP-9 — Claim 2 (Aug. 12, 2025). (Dkt. 2-8, PageID #36.)

Ex. 9 — Rejection Notice — Administrative Remedy (Aug. 13, 2025). (Dkt. 2-9, PageID #37.)

Ex. 10 — TruLincs Communication to CSW Keshock (Aug. 14, 2025). (Dkt. 2-10, PageID #38.)

Ex. 11 — Regional Administrative Remedy Appeal — Claim 2 (Aug. 25, 2025). (Dkt. 2-11, PageID #39.)

Ex. 12 — Rejection Notice — NERO (Sept. 10, 2025). (Dkt. 2-12, PageID #40.)

Ex. 13 — Central Office Administrative Remedy Appeal — Claim 2 (Sept. 23, 2025). (Dkt. 2-13, PageID #41.)

Ex. 14 — Rejection Notice — Central Office (Nov. 20, 2025). (Dkt. 2-14, PageID #42.)

Ex. 15 — TruLincs Communication to Dr. Cole, Psychology (June 2, 2025). (Dkt. 2-15, PageID #43.)

Ex. 16 — TruLincs Communication to CMC Bright (Aug. 18, 2025). (Dkt. 2-16, PageID #44.)

Ex. 17 — FSA Time Credit Assessment (Jan. 8, 2026). (Dkt. 2-17, PageID #45–46.)

Ex. 18 — Declaration of Jeffrey Paden, Reg. No. 21457-055 (NEOCC). (Dkt. 2-18, PageID #47.)

Ex. 19 — Declaration of Kailin Stewart, Reg. No. 26878510 (Butler County). (Dkt. 2-19, PageID #48.)

Ex. 20 — Declaration of Kailin Stewart, Reg. No. 26878510 (NEOCC). (Dkt. 2-20, PageID #49.)

Ex. 21 — Declaration of Daniel Simon, Reg. No. 38850068 (Butler County). (Dkt. 2-21, PageID #50.)

Ex. 22 — Declaration of Daniel Simon, Reg. No. 38850068 (NEOCC). (Filed herewith via Notice of Filing of Omitted Exhibit.)

Ex. 23 — Individualized Needs Plan — Initial Classification (Mar. 20, 2025). (Dkt. 2-22, PageID #51–52.)

Ex. 24 — Individualized Needs Plan — Program Review (Sept. 4, 2025). (Dkt. 2-23, PageID #53–54.)

Ex. 25 — BOP Press Release — FSA/Second Chance Act Directive (June 17, 2025). (Dkt. 2-24, PageID #55.)

**Supplemental Exhibits (Filed Herewith or To Be Filed)**

Ex. 26 — Offer of Employment — DeRiso Law Group (Mar. 18, 2026). [Filed herewith.]

Ex. 27 — Written Confirmation of RRM Court Attendance Restriction. [To be filed upon receipt.]

Ex. 28 — Updated FSA Time Credit Assessment. [To be filed upon receipt.]

Ex. 29 — Timeline of Custody, Programming, and Earned Credits. [Filed herewith.]

Ex. 30 — Revised Offer of Employment — DeRiso Law Group (Mar. 26, 2026). [To be filed upon receipt.]

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on: 03/30/2026

Brian DiPippa, Pro Se

Reg. No. 66590-510

P.O. Box 23430

Pittsburgh, Pennsylvania 15222

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I deposited a true and correct copy of the foregoing Declaration in the mail, postage prepaid, addressed to:

Office of the United States Attorney
Northern District of Ohio
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113

Date: 03/30/2026

Brian DiPippa, Pro Se