**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED

MAY 22 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

| | | |
|---|---|---|
| BRIAN DIPIPPA, | ) | CASE NO.: 4:26-CV-487 |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE JENNIFER |
| | ) | DOWDELL ARMSTRONG |
| | ) | |
| WARDEN, FCI ELKTON, | ) | PETITIONER'S TRAVERSE TO |
| | ) | RESPONDENT'S ANSWER |
| Respondent. | ) | |
| | ) | |

**TABLE OF CONTENTS**

Table of Authorities.................................................................................................................iii

Introduction...............................................................................................................................1

Statement of Issues....................................................................................................................1

Summary of Argument...............................................................................................................2

Statement of Facts......................................................................................................................3

  A.  Petitioner's Sentence and Custody.......................................................................................3

  B.  Petitioner's Programming: Period 1 (January 6 - February 26, 2025).................................4

  C.  Petitioner's Programming: Period 2 (February 26 - May 8, 2025).......................................5

  D.  Administrative Exhaustion and BOP Denials......................................................................6

  E.  Current Status and Relief at Stake.......................................................................................6

Argument...................................................................................................................................6

  I.   This Court Has Jurisdiction Over This Petition..................................................................6

  II.  Petitioner Is Entitled to Credits for the Pre-Arrival Period...............................................7

    A.  The BOP Regulations Are Invalid....................................................................................7

    B.  The Risk and Needs Assessment Is Not a Prerequisite to Earning Credits.....................9

    C.  The Location of Programming at Non-BOP Facilities Is Not Determinative................10

i

D. Petitioner's Activities Constitute Qualifying Programming............................................11

E. The Statute Does Not Reward BOP's Administrative Choices....................................12

III. Petitioner Is Entitled to Credits for the SPARC Glitch Period...........................................14

A. Petitioner Completed the SPARC-13 on February 27, 2025........................................14

B. BOP Cannot Use Its Own System Error to Deny Mandatory Credits...........................16

IV. Respondent's Arguments Do Not Withstand Scrutiny.......................................................17

A. Respondent's Case Citations Have Been Undermined by Miles...................................18

B. White v. Warden FCI Cumberland Is Distinguishable................................................20

V. Relief Requested.........................................................................................................20

Conclusion............................................................................................................................21

Certificate of Compliance.....................................................................................................23

Certificate of Service............................................................................................................24

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Adepoju v. Scales*, 782 F. Supp. 3d 306 (E.D. Va. 2025)      7, 16

*Benson v. Warden FCI Edgefield*, No. 24-6713 (4th Cir. Apr. 22, 2026)     *passim*

*Borker v. Bowers*, No. 24-10045, 2024 WL 2186742 (D. Mass. May 15, 2024), appeal dismissed, 2024 WL 5319356 (1st Cir. Oct. 25, 2024)     13, 16

*Brenneman v. Salmonson*, 2025 WL 957216 (E.D. Tex. Feb. 25, 2025)     9

*Claude v. Stover*, No. 3:24-cv-961, 2025 WL 375074 (D. Conn. Feb. 3, 2025)     10

*Dane v. Bayless*, No. 5:24-CV-157 (N.D. W.Va. 2024)     12, 18

*Dunaev v. Engleman*, No. 2:24-cv-09835-AH, 2025 WL 1558454 (C.D. Cal. Apr. 28, 2025), *report and recommendation adopted*, 2025 WL 1555493 (C.D. Cal. May 28, 2025)     18

*Gale v. Warden FCI Milan*, No. 24-13127, 2025 WL 223870 (E.D. Mich. Jan. 16, 2025)     24

*Hargrove v. Healy*, 155 F.4th 530 (6th Cir. 2025)     *passim*

*Harris v. Warden FCI Leavenworth*, No. 25-3086 (10th Cir. Apr. 28, 2026)     19

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)     *passim*

*Miles v. Bowers*, No. 25-1291, — F.4th — (1st Cir. Apr. 27, 2026)     *passim*

*Modeste v. Birkholz*, 809 F. Supp. 3d 891 (D. Alaska 2025)     7

*Mohammed v. Stover*, No. 3:23-CV-757, 2024 WL 1769307 (D. Conn. Apr. 23, 2024)     10

*Nycklass v. Healy*, No. 4:23-cv-02780, 2024 WL 1604748 (N.D. Ohio Apr. 12, 2024)     7

*Pelullo v. FCC Coleman-Low*, No. 5:23-cv-189-WFJ-PRL, 2024 WL 3771691 (M.D. Fla. Aug. 13, 2024)     8, 24

*Sharma v. Peters*, 756 F. Supp. 3d 1271 (M.D. Ala. 2024)     1, 2, 8, 14, 21

*Tantuwaya v. Birkholz*, No. 2:24-cv-02891, 2024 WL 4805423 (C.D. Cal. Oct. 10, 2024)     9

*Tiger Lily, LLC v. HUD*, 992 F.3d 518 (6th Cir. 2021)     8

*United States v. Small*, No. 22-1469, 2023 WL 4399212 (3d Cir. July 7, 2023)     10, 19

*White v. Warden FCI Cumberland*, 164 F.4th 326 (4th Cir. 2026)     10, 20

<u>STATUTES</u>

18 U.S.C. § 2241     1, 7

18 U.S.C. § 3585(a)     *passim*

18 U.S.C. § 3621(h)(6)     12

18 U.S.C. § 3624(c)     6, 7

18 U.S.C. § 3632(d)(4)(A)     *passim*

18 U.S.C. § 3635(3)(C)(xi)     4, 11

18 U.S.C. § 3635(5)     11, 12

**REGULATIONS**

28 C.F.R. § 523.41     *passim*

28 C.F.R. § 523.42     2, 6, 7

**OTHER AUTHORITIES**

U.S. Dep't of Justice, Bureau of Prisons, Program Statement 5410.01     5, 6, 8, 11, 15, 17

U.S. Gov't Accountability Off., GAO-23-105139, Federal Prisons: Bureau of Prisons Should Improve Efforts to Implement its Risk and Needs Assessment System (Mar. 2023)     14, 15

U.S. Gov't Accountability Off., GAO-25-108009, Priority Open Recommendations: Department of Justice (May 2, 2025)     13

U.S. Gov't Accountability Off., GAO-26-107268, Federal Prisons: Improvements Needed to the System Used to Assess and Mitigate Incarcerated People's Recidivism Risk (Jan. 2026)     14, 15

## INTRODUCTION

Petitioner Brian DiPippa, proceeding *pro se*, submits this Traverse in response to Respondent's Answer and Motion to Dismiss (ECF No. 16). This Court has jurisdiction under 28 U.S.C. § 2241 to review whether the Bureau of Prisons ("BOP") is executing Petitioner's sentence in accordance with federal law. *Hargrove v. Healy*, 155 F.4th 530, 534 (6th Cir. 2025); *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1274 (M.D. Ala. 2024). On April 27, 2026, the First Circuit issued *Miles v. Bowers*, No. 25-1291, — F.4th — (1st Cir. 2026), the most thorough circuit-level treatment of the legal questions presented here. The court held the BOP's designated-facility regulation invalid, the assessment prerequisite foreclosed, non-BOP facility programming evaluable, and individualized review required where a prisoner is eligible. *Id.*, slip op. at 31. Each holding maps directly onto the claims in this petition.

## STATEMENT OF ISSUES

1.  Whether the BOP may deny FSA time credits for the period from January 6, 2025 through February 25, 2025, during which Petitioner remained in federal custody awaiting transportation to his designated facility, based on regulations that conflict with the plain text of 18 U.S.C. § 3585(a) and that two circuit courts have held are inconsistent with the FSA's sentence-commencement framework.

2.  Whether the SPARC-13 needs assessment is a statutory prerequisite to earning FSA time credits under 18 U.S.C. § 3632(d)(4)(A), when the FSA's plain text imposes no such condition.

3.  Whether the BOP may deny 71 days of FSA credits based solely on its own system's failure to record a completed assessment, when Petitioner completed the assessment on February 27, 2025 and participated in qualifying programming throughout the disputed period.

1

4. Whether, where a prisoner is eligible for credits, the BOP must make an individualized determination rather than categorically deny credits under regulations the First Circuit has held are invalid.

## SUMMARY OF ARGUMENT

The BOP denied 121 days of First Step Act Time Credits on two grounds: that Petitioner was not at his designated BOP facility during the first disputed period, and that his needs assessment had not been recorded in BOP's system during the second. Both grounds fail as a matter of law, and BOP's own records contradict both.

As to Claim 1: The government relies on two regulations. The first, 28 C.F.R. § 523.42(a), conditions credit accrual on arrival at the designated BOP facility. The second, 28 C.F.R. § 523.41(c)(4)(ii), labels pre-designation custody as "designation status outside the institution." The First Circuit has held that § 523.42(a) conflicts with the plain text of 18 U.S.C. § 3585(a). *Miles v. Bowers*, No. 25-1291, slip op. at 14-15 (1st Cir. Apr. 27, 2026). Courts have held that § 523.41(c)(4)(ii) cannot be applied categorically to deny credits to a prisoner whose participation is verifiable. *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1282 (M.D. Ala. 2024). Neither regulation can be squared with what the statute says.

Five days before *Miles*, the Fourth Circuit independently reached the same conclusion on sentence commencement. *Benson v. Warden FCI Edgefield*, No. 24-6713, slip op. at 14 (4th Cir. Apr. 22, 2026). The court held that Benson's sentence commenced when he was taken into custody — not when he arrived at FCI Edgefield fifteen months later — and stated directly: "Critically, the FSA does not hinge the commencement of a prisoner's sentence on his arrival to his BOP-designated facility." *Id.* BOP's facility-arrival argument was, in the Fourth Circuit's words, "irrelevant to the commencement of his sentence for FSA purposes." *Id.* Having resolved the commencement question, the court vacated and remanded only for the district court to assess under *Loper Bright* whether BOP's definition of "successful participation" reflects the "single, best

2

meaning" of the FSA. Slip op. at 11-12, 16. Two independent circuit courts, issuing decisions five days apart, have now affirmatively held that a federal sentence commences for FSA purposes when the defendant is received in custody — not upon arrival at the designated BOP facility. Petitioner's participation during the pre-arrival period is documented by five declarations from three declarants. The government has not contested those facts, only the legal consequences.

As to Claim 2: Petitioner completed the SPARC-13 on February 27, 2025, the first day he could. BOP's TruLincs software failed to record it. His Case Manager acknowledged a "delay in posting," directed him to check his survey tab, and weeks later provided a paper re-survey that Petitioner completed with the notation "Retake of 02/27/25." BOP's own program review meanwhile shows four program waitlist enrollments and a completed BOP-administered course, AIDS Awareness on March 13, 2025, all before the assessment was officially recorded. BOP enrolled Petitioner in programming with one hand and denied him credit for it with the other. The U.S. Government Accountability Office (GAO) has twice documented the precise technology failures at issue. A system error that BOP's own oversight body identified cannot extinguish a mandatory statutory right.

## STATEMENT OF FACTS

### A. Petitioner's Sentence and Custody

BOP's own records establish the controlling date. The FSA Time Credit Assessment submitted as Respondent's Attachment 4 records "Start Incarceration: 01-06-2025," and BOP's sentence computation records "Date Computation Began: 01-06-2025." (ECF No. 16-1, Attachments 1, 4.) Petitioner was sentenced on January 6, 2025 in the Western District of Pennsylvania. (ECF No. 2-1; Kerr Decl. para. 2, ECF No. 16-1 at PageID #118.)

Respondent's Argument section states the sentencing date as "January 22, 2025." (ECF No. 16 at PageID #112.) That date appears to derive from BOP's internal processing records, not the

3

judgment. Respondent's own exhibits resolve the discrepancy. When the government's submissions are internally inconsistent, the exhibit governs.

From sentencing, Petitioner was in continuous federal custody: Butler County Prison from January 6 through January 8, 2025, then the Northeast Ohio Correctional Center ("NEOCC"), a contract facility, from January 8 through February 25, 2025. He arrived at FCI Elkton, his designated BOP facility, on February 26, 2025. (ECF No. 8, PageID #78-79.) Throughout this period, Petitioner awaited transportation to the official detention facility at which his sentence was to be served. 18 U.S.C. § 3585(a). His sentence had commenced on January 6, 2025. *Id.*

## B. Petitioner's Programming: Period 1 (January 6 - February 26, 2025)

At Butler County Prison, Petitioner worked as a unit orderly and a kitchen worker in the days following his sentencing. Both positions constitute qualifying EBRR programming under 18 U.S.C. § 3635(3)(C)(xi) and 28 C.F.R. § 523.41(a)(11), which expressly recognize inmate work and employment as credit-eligible activities. Daniel Simon and Kailin Stewart were incarcerated with Petitioner there. Both attest that the BOP did not make the FSA Needs Survey available at Butler County Prison and did not permit BOP program waitlist enrollment. (Simon Decl., ECF No. 2-21, PageID #50; Stewart Decl., ECF No. 2-19, PageID #48.) Both confirm Petitioner's unit orderly and kitchen work. (*Id.*)

At NEOCC, Petitioner arrived on January 8, 2025 and immediately sought programming. He requested placement on the unit orderly waitlist on the day he arrived. (ECF No. 2-7, PageID #33.) He participated in film screenings and structured speaker discussion events, a staff-hosted Black History Month trivia night, and regular physical exercise including yoga and outdoor recreation. Daniel Simon, Jeffrey Paden, and Kailin Stewart each independently attest that the BOP did not make the FSA Needs Survey available at NEOCC and did not permit BOP program waitlist enrollment there. (Simon NEOCC Decl., ECF No. 6-1, PageID #66; Paden Decl., ECF No. 2-18, PageID #47; Stewart NEOCC Decl., ECF No. 2-20, PageID #49.) All three directly witnessed

4

Petitioner's participation in those activities. (*Id.*) Petitioner never refused or declined any program or activity offered to him. (ECF No. 8, PageID #79.)

BOP has no SENTRY records for Butler County Prison or NEOCC because neither is a BOP-operated facility. That absence reflects BOP's choice not to track programming at non-BOP holding facilities, not any failure of participation by Petitioner. Five declarations from three declarants covering both facilities constitute competent evidence of the activities described. BOP has submitted no contrary evidence.

## C. Petitioner's Programming: Period 2 (February 26 - May 8, 2025)

Petitioner arrived at FCI Elkton on February 26, 2025. The following day, February 27, 2025, he completed the Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13") electronically through TruLincs and signed up for recommended classes. (ECF No. 8, PageID #79-80.) BOP policy requires the initial SPARC-13 to be completed within approximately 28 to 30 days of a prisoner's arrival at the designated facility. Program Statement 5410.01 at 8. BOP did not meet that window. The official recording of Petitioner's assessment came 71 days after his arrival, more than twice the required period.

Due to a TruLincs system error, the February 27 completion was not recorded in Petitioner's BOP profile. When his Case Manager held the initial classification meeting on March 20, 2025, Petitioner confirmed he had completed the survey. (ECF No. 8, PageID #79-80.) The Case Manager noted there was "sometimes a delay in posting" and directed him to check his TruLincs tab. No survey appeared. (ECF No. 8, PageID #80.) Over the following six weeks, Petitioner raised the recording failure at successive open house meetings; at each, the Case Manager acknowledged the delay but provided no resolution. On May 6, 2025, the Case Manager provided a paper survey. Petitioner completed it that day, writing "Retake of 02/27/25" on the date line. (*Id.*) BOP began crediting programming from May 8, 2025 and does not dispute Petitioner's

5

eligibility or participation from that date. The 71 days from February 27 through May 8, 2025 remain uncompensated.

### D. Administrative Exhaustion and BOP Denials

Petitioner pursued two separate administrative remedy tracks and exhausted all available remedies on both claims before filing this petition. (ECF Nos. 2-2 through 2-5; ECF Nos. 2-6 through 2-14.) BOP denials rely on Program Statement 5410.01 and 28 C.F.R. § 523.42, the regulation the First Circuit has now held is invalid. *Miles*, slip op. at 14-15. Respondent did not raise exhaustion as a defense. (ECF No. 16.)

### E. Current Status and Relief at Stake

Petitioner was transferred to Renewal Inc., a residential reentry center in Pittsburgh, Pennsylvania on February 24, 2026 and remains in BOP custody under 18 U.S.C. § 3624(c). (ECF No. 8, PageID #78.) Despite acknowledging January 6, 2025 as the Start Incarceration date in its own records, Respondent disallows credits for the pre-Elkton period and the subsequent 71-day period, citing "Missing needs assessment(s)." BOP cannot acknowledge the fact of Petitioner's incarceration in its own records while denying the legal consequences that flow from it.

Respondent states Petitioner's projected FSA release date is May 10, 2027. (ECF No. 16 at PageID #111.) Respondent's own Attachment 4 shows a second figure: an FSA Conditional Release Date of December 29, 2026. (ECF No. 16-1, PageID #134.) That is the date BOP uses for pre-release planning and classification decisions. By citing only May 10, 2027, Respondent understates the urgency of this petition. Application of the 121 disputed days yields approximately 40 additional FSA Time Credits, placing Petitioner's corrected release date in approximately mid-to-late November 2026. A favorable ruling advances the date BOP custody ends.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER THIS PETITION.

6

A petition under 28 U.S.C. § 2241 is the proper vehicle to challenge the manner in which BOP is executing a federal sentence, including the calculation of FSA Time Credits. *Hargrove v. Healy*, 155 F.4th 530, 534 (6th Cir. 2025); *Nycklass v. Healy*, No. 4:23-cv-02780, 2024 WL 1604748, at *2 (N.D. Ohio Apr. 12, 2024). This Court and the Sixth Circuit have each exercised § 2241 jurisdiction over FSA time credit disputes against this same respondent. *Hargrove*, 155 F.4th at 534; *Nycklass*, 2024 WL 1604748, at *2. Petitioner remains at Renewal Inc. under BOP supervision pursuant to 18 U.S.C. § 3624(c). Residential reentry center placement is part of the term of imprisonment, not supervised release. Respondent has not argued otherwise.

## II. PETITIONER IS ENTITLED TO CREDITS FOR THE PRE-ARRIVAL PERIOD.

Respondent does not contest that 18 U.S.C. § 3585(a) controls when Petitioner's sentence commenced. (ECF No. 16 at PageID #113.) Petitioner's sentence commenced January 6, 2025. That is not disputed. The only question is whether BOP's additional regulatory conditions — 28 C.F.R. § 523.42(a) and 28 C.F.R. § 523.41(c)(4)(ii) — can override the statute's mandatory "shall earn" command. Two circuits have now held they cannot.

### A. The BOP Regulations Are Invalid.

Respondent's denial of Period 1 credits rests on two regulatory provisions. The first, 28 C.F.R. § 523.42(a), provides that a sentence commences upon arrival at the designated BOP facility. The second, 28 C.F.R. § 523.41(c)(4)(ii), designates pre-designation custody as "designation status outside the institution" — a status BOP treats as categorically ineligible for credits. Both provisions fail.

The First Circuit has held that § 523.42(a) is invalid: "The view expressed in the regulation of when a sentence commences plainly conflicts with the text of the FSA." *Miles*, slip op. at 14-15. BOP itself declined to defend the regulation in *Miles*. *Id.* at 14. Multiple district courts have followed. *See Modeste v. Birkholz*, 809 F. Supp. 3d 891, 899-901 (D. Alaska 2025); *Adepoju v. Scales*, 782 F. Supp. 3d 306, 312-14 (E.D. Va. 2025).

7

Section 523.41(c)(4)(ii) fares no better. Courts have held that the categorical exclusions in § 523.41(c)(4) — including the "designation status outside the institution" bar Respondent specifically invokes, *see* ECF No. 16 at PageID #112-13; Kerr Decl. para. 6 — cannot be applied as a blanket denial to a prisoner whose participation is verifiable. *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1282 (M.D. Ala. 2024) (the "additional exclusions in 28 C.F.R. § 523.41(c)(4)(i-iv), which are not found in the language of the FSA, cannot categorically be applied to render [the prisoner] ineligible from earning or applying FTCs to which he may be entitled"). Even the cases Respondent relies on acknowledge that § 523.41(c)(4) restrictions are "presumptive bars," not absolute ones. *Pelullo v. FCC Coleman-Low*, 2024 WL 3771691, at *4. A presumption that has been rebutted by documented participation cannot support categorical denial. Where statutory text provides a clear answer, the inquiry ends. *Tiger Lily, LLC v. HUD*, 992 F.3d 518, 522 (6th Cir. 2021); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

The regulation's own illustrative examples reveal its intended scope: "an outside medical trip or escorted trip, in-transit or at an in-transit facility, a furlough for the full day." Program Statement 5410.01. Each example describes a prisoner temporarily removed from an existing designated facility. Petitioner had no designated BOP facility during his time at Butler County Prison and NEOCC. He was a newly sentenced prisoner awaiting initial designation, not a prisoner temporarily displaced from his institution. Applying § 523.41(c)(4)(ii) to that situation extends the regulation beyond its evident purpose.

The Fourth Circuit reached the same conclusion on the commencement question. *Benson v. Warden FCI Edgefield*, No. 24-6713, slip op. at 14 (4th Cir. Apr. 22, 2026). The court held that Benson's sentence commenced when he was taken into custody, not upon arrival at his designated facility, stating: "Critically, the FSA does not hinge the commencement of a prisoner's sentence on his arrival to his BOP-designated facility." *Id.* The fifteen months Benson spent at a non-BOP facility before reaching FCI Edgefield were "irrelevant to the commencement of his sentence for FSA purposes." *Id.* Having resolved commencement on the merits, the court vacated and remanded

8

only for the district court to determine whether BOP's definition of "successful participation" reflects the "single, best meaning" of the FSA under *Loper Bright*. Slip op. at 11-12, 16. The commencement question — the foundation of BOP's first basis for denial — has been decided by both circuits. Two independent circuit courts, issuing decisions five days apart, have held that a federal sentence commences for FSA purposes when the defendant is received in custody, not when the defendant arrives at the designated BOP facility. The First Circuit went further and held the facility-arrival regulation itself invalid. *Miles*, slip op. at 14-15. For this Court, there is no contrary circuit authority, and the two decisions that exist point in one direction.

## B.  The Risk and Needs Assessment Is Not a Prerequisite to Earning Credits.

BOP's alternative rationale for denying Period 1 credits is that a prisoner cannot earn credits until completing the SPARC-13 risk and needs assessment. 28 C.F.R. § 523.41(c)(2). The First Circuit rejected this argument directly: "the fact that the risk and needs assessment is a prerequisite for applying credits does not mean that it is a prerequisite for earning them." *Miles*, slip op. at 20 (emphasis in original). BOP itself conceded at oral argument in *Miles* that it "does and can award time credits prior to the assessment." *Id.* at 8 n.9. The statute says a prisoner "shall earn" credits for "successful participation" — not for successful completion of BOP-assigned programming. 18 U.S.C. § 3632(d)(4)(A)(i). BOP added "assigned" and imported a completion standard. Neither word appears in the statute. *See also Tantuwaya v. Birkholz*, No. 2:24-cv-02891, 2024 WL 4805423, at *4 (C.D. Cal. Oct. 10, 2024).

The statutory basis for the assessment itself reinforces this. Congress directed that the assessment provide "guidance" for assigning programming. 18 U.S.C. § 3632(b). Guidance is not a mandate. If the assessment is only guidance, credit eligibility cannot rationally turn on whether one was completed. The mandate that prisoners "shall earn" credits runs from the commencement of the sentence, *id.* § 3632(d)(4)(A), not from completion of an administrative tool designed to guide program assignment. *Miles*, slip op. at 20 ("the language does not condition participation in qualifying programming, or the earning of credits, on a prior assessment").

Respondent cites *United States v. Small*, No. 22-1469, 2023 WL 4399212, *6 (3d Cir. July 7, 2023), for the proposition that risk assessment classification is part of earning FSA credits. *Small* was decided under Chevron deference, which the Supreme Court abrogated in *Loper Bright*, 603 U.S. at 369. Post-*Loper Bright*, BOP's construction receives no deference. Statutory interpretation is reviewed de novo. *Hargrove*, 155 F.4th at 534. *Small* carries no weight here.

## C. The Location of Programming at Non-BOP Facilities Is Not Determinative.

Butler County Prison and NEOCC are not BOP-designated facilities. The BOP has argued in analogous cases that programming at non-federal facilities cannot generate credits. The First Circuit rejected that position: "the location of the pre-assessment participation cannot be determinative." *Miles*, slip op. at 26. BOP "cannot choose to house prisoners outside a federal facility...after commencement of their sentences, and then disregard qualifying activities undertaken at such a site if it is feasible to confirm the prisoners' participation." *Id.*

BOP counsel acknowledged in *Miles* that it is "difficult or sometimes impossible" to track programming at non-federal facilities. *Id.* That observation does not relieve BOP of its obligation where participation is verifiable. *Id.* Here, participation is verifiable. Simon (ECF No. 2-21, PageID #50) and Stewart (ECF No. 2-19, PageID #48) attest to Petitioner's activities at Butler County Prison. Simon (ECF No. 6-1, PageID #66), Paden (ECF No. 2-18, PageID #47), and Stewart (ECF No. 2-20, PageID #49) attest to activities at NEOCC. All five declarations from three declarants confirm that BOP withheld the FSA Needs Survey and did not permit BOP program waitlist enrollment at either facility. *See Brenneman v. Salmonson*, 2025 WL 957216, at *7 (E.D. Tex. Feb. 25, 2025).

The distinction from *White v. Warden FCI Cumberland*, 164 F.4th 326 (4th Cir. 2026), is factual, not temporal. *White* involved a prisoner who "did not participate at all" during three days at a federal transfer center — he neither requested nor was offered any programming during that brief stay. *Id.* at 328-29. Here, Petitioner requested a work assignment on the day he arrived at NEOCC

10

(ECF No. 2-7, PageID #33), worked as a unit orderly and kitchen worker at Butler County Prison, and participated in available fitness and recreational activities throughout both placements. BOP made no formal FSA programming available at either facility. That was BOP's choice. Petitioner did everything available to him. *Miles* expressly distinguished extended pre-designation placement from brief facility transit. *Miles*, slip op. at 26.

### D. Petitioner's Activities Constitute Qualifying Programming.

The statute provides two categories of qualifying activity. EBRR programming covers activities shown by empirical evidence to reduce recidivism. 18 U.S.C. § 3635(3)(A)-(B). Productive activities cover activities designed to allow prisoners with a minimum or low risk of recidivism to maintain that risk level. *Id.* § 3635(5). BOP's records classify Petitioner as Low Risk Recidivism Level (R-LW). (ECF No. 2-17, PageID #45.) Both categories are credit-eligible under 18 U.S.C. § 3632(d)(4)(A).

Unit orderly and kitchen worker positions are expressly covered. Section 3635(3)(C)(xi) lists "a prison job" as a qualifying EBRR activity, and 28 C.F.R. § 523.41(a)(11) echoes that categorization. Petitioner held both positions at Butler County Prison, confirmed by Simon and Stewart. (Simon Decl., ECF No. 2-21, PageID #50; Stewart Decl., ECF No. 2-19, PageID #48.) Arthur Miles held an identical unit orderly position at Marion County Jail, and the First Circuit held that work must be evaluated for credit eligibility. *Miles*, slip op. at 11, 28-29.

At NEOCC, Petitioner requested placement on the unit orderly waitlist on the day he arrived. (ECF No. 2-7, PageID #33.) He never refused or declined any offered activity. (ECF No. 8, PageID #79.) Under BOP's own policy, a prisoner who is able and willing to participate — requesting work assignments, joining available waitlists, declining nothing — is successfully participating for credit purposes. Program Statement 5410.01, Section 3(c); *see Miles*, slip op. at 8. That principle applies with equal force whether the prisoner is waitlisted at a designated facility or held pre-designation at a contractor facility: a prisoner who does everything available to him has

11

satisfied his statutory obligation. The obstacle is on BOP's side of the ledger, not his. BOP made no formal FSA programming available at NEOCC. That was BOP's choice. *See Mohammed v. Stover*, 2024 WL 1769307, at *6 (D. Conn. Apr. 23, 2024).

The physical exercise, yoga, and outdoor recreation at NEOCC independently qualify as productive activities under § 3635(5), which covers activities designed to allow low-risk prisoners to maintain their risk classification. Sustained fitness activity by a prisoner classified at R-LW falls within the statutory text. BOP's own initial classification plan identifies a Rec/Leisure/Fitness need with an onset date of February 26, 2025, the day Petitioner arrived at FCI Elkton, consistent with the fitness activities he regularly engaged in at NEOCC throughout the preceding seven weeks. (ECF No. 2-22, PageID #51-52.) An agency that identifies a criminogenic need in a prisoner's file cannot simultaneously claim that activities directly addressing it do not count.

### E. The Statute Does Not Reward BOP's Administrative Choices.

The FSA imposes an affirmative obligation on BOP to provide prisoners "with the opportunity to actively participate in [EBRR programs]...throughout their entire term of incarceration." 18 U.S.C. § 3621(h)(6). BOP chose not to operate FSA-approved programming at Butler County Prison or NEOCC. It chose not to track programming at those facilities in SENTRY. It held Petitioner at those facilities for seven weeks while he awaited designation. Having made those choices, BOP cannot invoke the resulting absence of records to categorically deny credits. *See Miles,* slip op. at 25.

Respondent argues that only programming formally assigned by BOP under 18 U.S.C. § 3632(a)(3) qualifies for credit, and that because Petitioner's pre-Elkton activities were not BOP-assigned, they cannot generate credits. (ECF No. 16 at PageID #114.) BOP's own counsel foreclosed this argument in *Miles.* At oral argument, BOP acknowledged that "there's nothing prohibiting the BOP from" awarding credits for pre-assessment activities it considers "sufficiently equivalent" to approved EBRR programs or productive activities, and that "the BOP does and can

12

award time credits prior to the assessment." *Miles*, slip op. at 8 n.9. Having made that concession in one case, BOP cannot argue the opposite in another. The FSA's assignment provision in § 3632(a)(3) tells BOP what it must do. It does not convert BOP's assignment decisions into a condition precedent to a prisoner's statutory entitlement under § 3632(d)(4)(A). If it did, BOP could defeat the entire credit system simply by declining to assign programming to prisoners at non-BOP facilities. Congress did not write a statute whose benefits BOP can extinguish by administrative inaction. *Miles*, slip op. at 25.

Respondent's position amounts to what one court aptly called a Catch-22: Petitioner could not earn credits until assessed, and he could not be assessed until he arrived at a designated facility, because BOP does not assess prisoners at non-BOP facilities. "The timing of those assessments and the assignment of programming, of course, is entirely within BOP's control." *Borker v. Bowers*, No. 24-10045, 2024 WL 2186742, at *6 (D. Mass. May 15, 2024), *appeal dismissed,* 2024 WL 5319356 (1st Cir. Oct. 25, 2024). In *Borker*, the court held that BOP's practice of withholding assessments until facility arrival "attempts to do indirectly (through policy and practice) what the BOP cannot do directly (through the regulation already deemed invalid)." *Id.* at *3. The First Circuit cited *Borker* approvingly. *Miles*, slip op. at 8. The BOP cannot escape its statutory obligations by conflating its broad administrative discretion over programming logistics with an inmate's non-discretionary statutory right to earn credits. Under § 3632(d)(4)(A), Congress dictated that an eligible prisoner shall earn credits. The agency's choice to prioritize administrative convenience over systematic data collection cannot nullify an explicit act of Congress.

Respondent's own exhibits confirm Petitioner's IFRP completion, recognized as a qualifying productive activity under 28 C.F.R. § 523.41(a)(5). (ECF No. 16-1, Attachment 3, PageID #129 (FRP Assignment: COMPLT).) The cases Respondent cites do not hold that BOP facility assignment is a textual requirement under the First Step Act. *Dane v. Bayless* and *Dunlap v. Warden FMC Devens* rested on the now-invalid designated-facility regulation and the assessment-prerequisite argument *Miles* rejected. *Dunlap*'s magistrate described BOP's conduct as

13

"palpably unfair" but felt bound by deference frameworks *Miles* has since displaced. That foundation no longer holds.

If the Court determines that further factual development is required before ordering credit directly, Petitioner requests the alternative remedy *Miles* directed: an order requiring BOP to conduct an individualized determination of whether his activities constitute qualifying EBRR programming or productive activities under § 3632(d)(4), and to report its findings to this Court within 30 days. *Miles*, slip op. at 31; *Claude v. Stover*, 2025 WL 375074, at *10 (D. Conn. Feb. 3, 2025); *Sharma v. Peters*, 756 F. Supp. 3d 1271, 1284 (M.D. Ala. 2024). That remedy does not require this Court to determine credit eligibility in the first instance. It does require BOP to address the record substantively. A bare assertion of "no SENTRY records" will not satisfy it. Five sworn declarations from three declarants constitute competent evidence of participation that BOP must evaluate on the merits. The GAO has twice documented that BOP's own recordkeeping systems are unreliable, GAO-23-105139 (Mar. 2023); GAO-26-107268 (Jan. 2026) — which means the absence of a SENTRY entry neither proves nor disproves what occurred at Butler County Prison or NEOCC. The Court retains jurisdiction to evaluate BOP's response and to order further relief if BOP's determination is conclusory or inconsistent with the record before this Court.

## III. PETITIONER IS ENTITLED TO CREDITS FOR THE SPARC GLITCH PERIOD.

### A. Petitioner Completed the SPARC-13 on February 27, 2025, Not May 8, 2025.

Respondent states that Petitioner "completed his Standardized Prisoner Assessment for Reduction in Criminality" on May 8, 2025. (ECF No. 16 at PageID #110; Kerr Decl. para. 7.) That date reflects when BOP's system recorded the paper re-completion, not when Petitioner first satisfied his obligation. Petitioner completed the SPARC-13 electronically through TruLincs on February 27, 2025, the day after arriving at FCI Elkton, and simultaneously signed up for recommended classes. (ECF No. 8, PageID #79-80.) The TruLincs system failed to record the completed survey. At his classification meeting on March 20, 2025, Petitioner confirmed to his

14

Case Manager that he had completed the survey; the Case Manager noted there was "sometimes a delay in posting" and directed him to check his TruLincs tab. No survey appeared. (ECF No. 8, PageID #80.) Over the following six weeks, Petitioner raised the recording failure at successive open house meetings; at each, the Case Manager acknowledged the delay but provided no resolution. On May 6, 2025, the Case Manager provided a paper survey. Petitioner completed it that day, writing "Retake of 02/27/25" on the date line. (*Id.*) The May 8 date in BOP's system is when the paper re-completion was processed, not when Petitioner first completed the assessment.

Respondent's Answer does not address this account at all. The Kerr Declaration states only that Petitioner "completed" the assessment on May 8, 2025. It does not dispute the February 27 electronic completion. It does not address the TruLincs error. It does not address the "Retake of 02/27/25" notation. The factual record on the TruLincs failure is uncontroverted.

BOP's own policy required the initial SPARC-13 within approximately 28 to 30 days of arrival. Program Statement 5410.01 at 8. Petitioner arrived February 26, 2025. Under BOP's own standards, the assessment should have been recorded by approximately March 26, 2025. The official recording did not occur until May 8, 2025, more than twice the required window. Even setting aside Petitioner's February 27 completion entirely, BOP cannot invoke a recordkeeping failure that departed so significantly from its own internal standards and use that failure against the prisoner who completed the work on time.

GAO has confirmed this is not an isolated problem. In March 2023, GAO found that BOP "does not have readily-available, complete, and accurate data to determine if assessments were conducted within required First Step Act and internal timeframes." GAO-23-105139. In January 2026, GAO found the problem persisted, with BOP completing timely initial assessments for only about 75 percent of the cohort studied, attributing failures to "technology issues" among other causes. GAO-26-107268. The "Retake of 02/27/25" notation is consistent with exactly this

15

documented pattern. BOP cannot rely on a recordkeeping system its own oversight body has twice found deficient.

**B. BOP Cannot Use Its Own System Error to Deny Mandatory Credits.**

The FSA provides that eligible prisoners "shall earn" time credits. 18 U.S.C. § 3632(d)(4)(A). That mandate does not yield to administrative error. *See Adepoju v. Scales*, 782 F. Supp. 3d 306, 313 (E.D. Va. 2025) (BOP's mandatory obligation to credit eligible prisoners cannot be circumvented by administrative failure).

Respondent argues that Petitioner "did not successfully complete programming" before the needs assessment was completed, characterizing his pre-assessment participation as a single "unassigned program." (ECF No. 16 at PageID #112-114.) That characterization is contradicted by BOP's own records on multiple fronts.

BOP's program review (ECF No. 16-1, Attachment 3, PageID #129) shows that Petitioner completed AIDS Awareness on March 13, 2025, weeks before the assessment was officially recorded on May 8, 2025. AIDS Awareness is a course offered, administered, and recorded by BOP staff at FCI Elkton. It appears on BOP's own official program review. Calling it "unassigned" because it preceded a formal assessment does not change what it is: BOP-administered programming that Petitioner completed at his designated BOP facility. BOP cannot simultaneously record a course on its official records and disclaim responsibility for it. The government's own exhibit refutes the government's own argument.

The same program review shows that as of March 4, 2025, only six days after arriving at FCI Elkton, Petitioner was enrolled on the Non-Residential Drug Treatment (NRDAP) waitlist, with a Drug Education waitlist enrollment as of March 19, 2025, and a work assignment to Education Evenings (EDUC EVE) beginning March 21, 2025. (ECF No. 16-1, Attachment 3, PageID #129.) BOP's initial classification plan (ECF No. 2-22) further shows that at the March 20, 2025 Unit Team meeting, Petitioner was placed on waitlists for Criminal Thinking and

16

Occupational Education. Under BOP's Program Statement 5410.01, Section 3(c), an inmate on a waitlist for a recommended program is considered to be successfully participating.

BOP enrolled Petitioner on four separate program waitlists, administered a course that appears on its own official records, and assigned him to a work detail, all before it claims his assessment was complete, then argues he was not successfully participating during those same weeks. The contradiction is not Petitioner's. It is in BOP's own records. An agency cannot enroll a prisoner in programming and simultaneously deny he was participating.

The record also shows that Petitioner satisfied over $50,000 in court-ordered restitution, fines, and fees during his incarceration. (ECF No. 2 at PageID #23; ECF No. 16-1, Attachment 3, PageID #129 (FRP Assignment: COMPLT).) Participation in the Inmate Financial Responsibility Program is expressly recognized as a qualifying productive activity under 28 C.F.R. § 523.41(a)(5). To the extent any pre-assessment activity is deemed insufficiently equivalent, IFRP completion answers that question: it is a productive activity BOP's own regulation identifies, confirmed by BOP's own records.

BOP policy further provides that "temporary operational or programmatic interruptions authorized by the Bureau...that prevent an inmate from participation in EBRR programs or productive activities" do not affect successful participation status for credit purposes. 28 C.F.R. § 523.41(c)(3). A software failure preventing recording of a completed assessment is precisely that kind of operational interruption. The First Circuit held that BOP "allows prisoners to earn time credits, even without participation in EBRR programs, when the prisoners are able and willing to complete programming post-assessment but suitable programming is unavailable." *Miles*, slip op. at 8 (citing *Borker*, 2024 WL 2186742, at *2-3). *Miles* forecloses any categorical denial of credits based on pre-assessment timing. *Miles*, slip op. at 18-20. The 71 days must be credited.

## IV.  RESPONDENT'S ARGUMENTS DO NOT WITHSTAND SCRUTINY.

17

## A. Respondent's Case Citations Have Been Undermined by Miles.

While *Miles* is an out-of-circuit decision, it warrants adoption here because its reasoning applies the zero-deference textual analysis the Sixth Circuit requires after *Loper Bright*. *See Hargrove v. Healy*, 155 F.4th 530, 534 (6th Cir. 2025) (de novo statutory interpretation). The Sixth Circuit has not addressed pre-arrival credit accrual. *See Hargrove*, 155 F.4th at 530 (supervised release credits, not pre-arrival accrual). In the absence of contrary Sixth Circuit authority, *Miles* is the most persuasive circuit-level treatment of these questions available.

Respondent relies on *Dane v. Bayless*, No. 5:24-CV-157 (N.D. W.Va. 2024), *Pelullo v. FCC Coleman-Low* (M.D. Fla. 2024), and *Dunlap v. Warden FMC Devens* (D. Mass. 2024). None remains persuasive authority after *Miles*. *Dane* and *Pelullo* rested on the designated-facility regulation and the assessment-prerequisite argument, both of which *Miles* rejected. *Dunlap*'s magistrate described BOP's conduct as "palpably unfair" but recommended denial under deference frameworks *Miles* has since displaced. Respondent cites cases whose legal foundation *Miles* dismantled. *Gale v. Warden FCI Milan*, No. 24-13127, 2025 WL 223870 (E.D. Mich. Jan. 16, 2025), which denied pre-arrival credits on similar facts, was decided before either *Miles* or *Benson* — more than a year before those decisions — and applied the same pre-*Miles* framework that *Dane* and *Dunlap* shared. Its reasoning does not survive those decisions.

Respondent also acknowledged that *Dunaev v. Engleman*, No. 2:24-cv-09835-AH, 2025 WL 1558454 (C.D. Cal. Apr. 28, 2025), *report and recommendation adopted*, 2025 WL 1555493 (C.D. Cal. May 28, 2025), supports Petitioner's position on Claim 2. (ECF No. 16 at PageID #115 ("*Dunaev*, on the other hand, does support Petitioner's position.").) Respondent asks this Court to disregard it as non-binding but offers no principled basis to do so. *Dunaev*'s analysis is consistent with *Miles*. When the government's own filing concedes that a decision it cited favors Petitioner, that concession speaks for itself.

18

Respondent may cite *United States v. Small*, No. 22-1469, 2023 WL 4399212, *6 (3d Cir. July 7, 2023), for the proposition that risk assessment classification is part of earning FSA credits. *Small* was decided under Chevron deference, which the Supreme Court abrogated in *Loper Bright*, 603 U.S. at 369. Post-*Loper Bright*, BOP's construction receives no deference. *Small* carries no weight in this analysis.

Respondent may also cite *Harris v. Warden FCI Leavenworth*, No. 25-3086 (10th Cir. Apr. 28, 2026), issued the day after *Miles*. *Harris* denied FSA credits where the prisoner produced no evidence of actual participation — "it is not a question of whether he successfully participated; it is a question of whether he participated at all, and the record shows that he did not." *Id.* at 13 (quoting *White*, 164 F.4th at 333). The Tenth Circuit expressly distinguished *Benson* as a case vacated for failure to develop the record where "evidence was allegedly available." *Id.* Petitioner is in *Benson*'s posture, not *Harris*'s. Five declarations from three declarants document participation at both pre-Elkton facilities. BOP's program review shows four waitlist enrollments, a completed BOP-administered course, and IFRP completion, all before the disputed assessment date. That is exactly the evidence *Harris* found lacking. Petitioner has it.

*Benson v. Warden FCI Edgefield*, No. 24-6713 (4th Cir. Apr. 22, 2026), decided days before *Miles*, carries more weight than its procedural posture suggests. The Fourth Circuit held at page 14 that Benson's sentence commenced when he was taken into custody, that "the FSA does not hinge the commencement of a prisoner's sentence on his arrival to his BOP-designated facility," and that BOP's facility-arrival argument was "irrelevant to the commencement of his sentence for FSA purposes." Slip op. at 14. The court then vacated and remanded only for *Loper Bright* analysis of the "successful participation" definition — BOP's second basis for denial. Slip op. at 11-12, 16. On the sentence-commencement question that is BOP's first basis for denial in this case, both the First and Fourth Circuits have spoken. The First Circuit held the regulation invalid; the Fourth Circuit held the underlying commencement principle. Together they represent the

current state of circuit law on the question this Court is now asked to decide. Respondent has cited no contrary circuit authority, because none exists.

## B. White v. Warden FCI Cumberland Is Distinguishable.

*White v. Warden FCI Cumberland*, 164 F.4th 326 (4th Cir. 2026), denied credits on a narrow factual ground: the prisoner "did not participate at all" during three days at a federal transfer center. He neither requested nor was offered any programming during that stay. *Id.* at 328-29, 331, 333.

This case differs in every relevant respect. Five declarations from three declarants confirm unit orderly and kitchen work at Butler County Prison and film events, trivia nights, and fitness activities at NEOCC. (ECF No. 2-21, PageID #50; ECF No. 2-19, PageID #48; ECF No. 6-1, PageID #66; ECF No. 2-18, PageID #47; ECF No. 2-20, PageID #49.) Petitioner requested a work assignment on the day he arrived at NEOCC. (ECF No. 2-7, PageID #33.) BOP's own records confirm waitlist enrollments during the disputed period. (ECF No. 2-22, PageID #51-52.) This is not a case of no participation. It is a case of BOP refusing to evaluate documented participation because it occurred at non-BOP facilities.

Under 18 U.S.C. § 3585(a), a sentence commences when a defendant is "received in custody awaiting transportation to" the official detention facility. Courts now read statutes as written, without deferring to agency interpretations. *Loper Bright*, 603 U.S. at 369. The BOP's regulation, which starts the credit clock only upon arrival at the designated facility, cannot be squared with that text. The First Circuit has read the same statute and reached the same conclusion. This Court should do the same.

## V. RELIEF REQUESTED.

For the foregoing reasons, Petitioner respectfully requests that this Court grant the following relief:

20

1. Order the BOP to apply all 121 days from January 6, 2025 through May 8, 2025 as FSA Time Credits at the statutory rate of 10 days per 30 days of qualifying participation, and recalculate Petitioner's FSA Conditional Release Date accordingly;

2. In the alternative, order the BOP to conduct an individualized determination, consistent with *Miles v. Bowers* and *Sharma v. Peters*, of whether Petitioner's activities during the disputed periods constitute qualifying EBRR programming or productive activities under 18 U.S.C. § 3632(d)(4), and to report its findings to this Court within 30 days;

3. Award any further relief this Court finds just and proper.

## CONCLUSION

BOP converted its own administrative choices into a denial of credits the statute says Petitioner shall earn. It housed him at non-BOP facilities for seven weeks without tracking programming. Its software failed to record an assessment he completed the first day he could. It enrolled him in four program waitlists, assigned him to a work detail, and administered a course that appears on its own official records — then argued he was not participating. None of those choices can be charged to Petitioner, and none provides a lawful basis for withholding 121 days of credits.

The statute is unambiguous: eligible prisoners shall earn credits from the commencement of their sentence. Petitioner's sentence commenced on January 6, 2025. He participated in available programming throughout both disputed periods and never refused or declined any activity offered. He completed the SPARC-13 the day after arriving at FCI Elkton. BOP has not disputed any of these facts. It has only disputed the legal consequences, pointing to a regulatory framework a federal circuit court has held is invalid. This Court should order relief.

Respectfully submitted,

21

_[signature]_

Brian DiPippa, *Pro Se*

Reg. No. 66590-510

P.O. Box 23430

Pittsburgh, Pennsylvania 15222

Date: 5/18/26

22

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATIONS

Pursuant to Northern District of Ohio Local Civil Rules 3.16 and 7.1(f), the undersigned Petitioner hereby certifies that this case has been assigned to the Pro Se/Standard Track. Petitioner further certifies that this Traverse complies with the expanded page limitations established for unrepresented parties under Local Civil Rule 3.16, as the substantive body of this brief does not exceed the absolute 30-page maximum limit. The Table of Contents and Table of Authorities are excluded from the page count pursuant to Local Civil Rule 3.16.

Respectfully submitted,

Brian DiPippa, *Pro Se*

Reg. No. 66590-510

P.O. Box 23430

Pittsburgh, Pennsylvania 15222

Date: 5/18/26

23

## CERTIFICATE OF SERVICE

I hereby certify that on the date indicated below, I deposited a true and correct copy of the foregoing Traverse in the mail, postage prepaid, addressed to:

Patricia M. Fitzgerald

Assistant United States Attorney

801 West Superior Avenue, Suite 400

Cleveland, Ohio 44113

Date: 5/18/26

Brian DiPippa, *Pro Se*

24